UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES ANDREW STILES and<br>EDWARD GRAY STILES,<br><br>Defendants. | **SEALED INDICTMENT**<br><br>23 Cr.<br><br>**23 CRIM 098** |

The Grand Jury charges:

## Overview of the Insider Trading Scheme

1. From at least in or about June 2020 through in or about July 2020, JAMES ANDREW STILES (known as Andrew Stiles and referred to herein as "STILES" or "ANDREW STILES") and EDWARD GRAY STILES (known as Gray Stiles and referred to herein as "GRAY" or "GRAY STILES"), the defendants, and others known and unknown, participated in an insider trading scheme in which ANDREW STILES, in violation of duties of trust and confidence that he owed to his employer, misappropriated material, non-public information ("MNPI"), and used that information to trade in the stock of the Eastman Kodak Company ("Kodak"), and provided misappropriated MNPI to GRAY STILES with the intent that GRAY would likewise trade on that information. GRAY STILES, knowing of ANDREW STILES's breach of duty, then also traded in Kodak stock based on the MNPI.

2. In or about 2020, ANDREW STILES, the defendant, was an executive at a company ("Company-1") that was working with Kodak to collaborate on the production of chemicals that could be used for pharmaceutical manufacturing. Company-1 was also assisting Kodak in its application for a significant government loan, which ultimately resulted in the announcement, on or about July 27, 2020, of a government "letter of interest" to provide Kodak

1

with a loan of $765 million (the "LOI"). In the days following that announcement, Kodak stock rose substantially, at one point increasing to more than 2,500% above the closing price prior to the publication of the news of the LOI.

3. Between in or about June 2020, after ANDREW STILES, the defendant, learned about the potential loan to Kodak, and July 27, 2020, the date the LOI was first publicized, STILES purchased more than 90,000 shares of Kodak stock in approximately 11 separate transactions. Those transactions included multiple purchases of Kodak stock the day before the LOI was scheduled to be announced. STILES then sold all of his Kodak shares less than 24 hours after the news of the LOI became public. STILES's illicit trading resulted in realized profits of more than $500,000.

4. ANDREW STILES, the defendant, also tipped his cousin, GRAY STILES, the defendant, who purchased more than 34,000 Kodak shares in approximately 10 transactions in June and July 2020. GRAY purchased the majority of those shares the day prior to the scheduled announcement of the LOI. GRAY's illicit trading resulted in realized profits of more than $700,000.

### Background and Relevant Entities and Individuals

5. The onset of the COVID-19 pandemic prompted significant U.S. government action in connection with pharmaceutical production and manufacturing. In particular, there was a concerted effort to relocate and augment the pharmaceutical supply chain in the United States. Among other government efforts, the U.S. International Development Finance Corporation ("DFC") was authorized to issue domestic loans to address supply chain issues related to the pandemic. In spring and summer 2020, Kodak employees engaged with personnel at DFC in connection with a possible government contract and/or loan.

6. At all times relevant to this Indictment, Kodak was a publicly traded company headquartered in Rochester, New York, whose stock traded on the New York Stock Exchange under the ticker "KODK." Kodak is well known for its business in photography and printing, but it also has a significant history in chemical manufacturing. In recent years, in addition to maintaining chemical operations in connection with its photo business, Kodak has explored manufacturing materials that can be used in pharmaceutical products. In particular, key starting materials ("KSMs") are chemicals that are ultimately used by pharmaceutical companies and contract manufacturers to produce final drug products. In or about spring 2020, as the COVID-19 pandemic began, Kodak explored potential opportunities to expand production of KSMs in connection with potential COVID-19 treatments. Between approximately May and July 2020, Kodak was in contact with U.S. government entities and officials about the possibility of obtaining a significant contract or loan to bolster Kodak's manufacturing of chemicals that could be used for, among other things, potential COVID-19 treatments.

7. In connection with those efforts, Kodak was in contact with Company-1, a pharmaceutical manufacturing company, beginning in or about March 2020. Also in early 2020, ANDREW STILES, the defendant, began working with Company-1 through his employment at another entity, and then was hired by Company-1 directly in or about April 2020. When STILES was hired, he was one of a small number of employees of Company-1, and he reported directly to the CEO (the "Company-1 CEO"). STILES was responsible for, among other things, government initiatives and contracts, and was a member of the executive committee of Company-1 (the "Company-1 Executive Committee").

**Kodak Seeks Loan; ANDREW STILES and GRAY STILES Trade on MNPI**

8. In approximately May 2020, employees at Company-1, including the Company-1 CEO and ANDREW STILES, the defendant, learned that Kodak was pursuing a significant government loan to support Kodak's production of critical pharmaceutical components. The Company-1 CEO provided Kodak with advice and guidance in connection with Kodak's loan application process. As of late May 2020, the Company-1 CEO was actively assisting Kodak in that process and was updating the Company-1 Executive Committee—including STILES—about Kodak's progress.

9. As part of that assistance, Kodak and Company-1 also began discussing a potential letter of intent whereby Kodak would agree to supply Company-1 with KSMs and active pharmaceutical ingredients pursuant to a long-term supply contract. On or about May 29, 2020, Kodak and Company-1 entered into a confidentiality agreement in connection with those efforts. The confidentiality agreement applied to all employees of Company-1 and prohibited both parties from, among other things, utilizing relevant materials for any purpose other than pursuing, implementing, or supporting the joint project. Members of the Company-1 Executive Committee were aware of and subject to the confidentiality agreement.

10. ANDREW STILES, the defendant, after receiving MNPI relating to the development of Kodak's pharmaceutical ingredients business and its pursuit of a significant government loan, made his first purchases of Kodak stock shortly thereafter, on June 3, 2020, buying more than 35,000 shares. On June 4, 2020, GRAY STILES, the defendant, having been provided MNPI by ANDREW STILES, made his first purchase of Kodak stock, buying approximately 3,800 shares. On June 5, 2020, ANDREW STILES purchased more than 4,000 additional shares, and GRAY STILES purchased more than 1,000 additional shares.

4

11. Throughout June 2020, Kodak continued its efforts to apply for a government loan of hundreds of millions of dollars. Employees of Company-1, including ANDREW STILES, the defendant, were aware of, and discussed, Kodak's efforts, including discussing whether Company-1 should apply for a similar loan. On or about June 8, 2020, Kodak and Company-1 formally entered into a non-binding letter of intent in connection with a proposed long-term supply contract for the supply of certain chemicals from Kodak manufacturing facilities. This would ensure, among other things, that Kodak would have a customer for the materials it would produce in connection with receiving the government loan. Also by in or about June 2020, the potential loan to Kodak from the government had increased to approximately more than $500 million. Members of the Company-1 Executive Committee, including ANDREW STILES, were generally informed and aware of these developments.

12. On or about June 26, 2020, Kodak submitted a DFC loan program document indicating that it had applied for a loan in the amount of $655 million. Also on June 26, 2020, ANDREW STILES, the defendant, rolled over $140,000 from a retirement plan into a brokerage account that he subsequently used to purchase additional Kodak stock based on MNPI regarding Kodak's pharmaceutical ingredients business and its pursuit of the government loan. On June 29, GRAY STILES, the defendant, texted a relative, among other things, "i talked to Andrew this weekend and he said Trump is laying the ground work to announce updates to old pharmaceutical manufacturing facilities." Later that day and through on or about July 1, 2020, GRAY STILES purchased more than 2,000 additional shares of Kodak stock. Between on or about July 1 and July 7, 2020, ANDREW STILES purchased more than 35,000 additional shares of Kodak stock.

5

13. On July 9, 2020, ANDREW STILES and GRAY STILES, the defendants, exchanged the following coded text messages, referencing the expected amount of the government loan, in millions of dollars, and the anticipated timing:

**Gray**: Any update on the film we sent off a few weeks ago to get developed

**Andrew**: 600+. Maybe 2 weeks out

**Gray**: I can live with that hahaha

At that time, as described above, Kodak had applied for a loan in the amount of $655 million, and an announcement was anticipated to be possible in the coming weeks. Between July 20 and July 22, 2020, GRAY STILES purchased more than 6,900 additional shares of Kodak stock, and ANDREW STILES purchased more than 600 additional shares.

14. On July 23, 2020, ANDREW STILES and GRAY STILES, the defendants, exchanged the following text messages:

**Gray**: Any update on time frame? Everything getting destroyed this afternoon

**Andrew**: Patience young grasshopper

**Gray**: Hahaha trying but more importantly I need to know how much to buy on dips

The following day, on July 24, ANDREW STILES purchased approximately 2,000 additional shares of Kodak stock and GRAY STILES purchased approximately 2,300 additional shares.

### LOI is Planned and Scheduled; Defendants Continue to Trade

15. On or about Friday, July 24, 2020, a government employee contacted the Company-1 CEO to invite the Company-1 CEO to the Kodak LOI announcement. The government employee conveyed that the announcement would occur in the coming days, early the following week. On Sunday, July 26, 2020, the Company-1 CEO sent an email to a small number of employees of Company-1, including ANDREW STILES, the defendant, stating, among other

6

things, that the Company-1 CEO "was asked to meet POTUS [the President of the United States] on Tuesday by [a government employee] for a Kodak announcement." The Company-1 CEO added, in the email, that it "will be interesting to see how things play out Tues [July 28] for their [Kodak's] big announcement."

16. The next day, on July 27, 2020, ANDREW STILES, the defendant, tipped GRAY STILES, the defendant, that the Kodak announcement was scheduled to be the following day, texting: "Tmw." Less than one minute later, GRAY responded: "Hot damn." On the same day, following that text exchange and prior to the publication of any news about the announcement, ANDREW STILES purchased approximately more than 11,000 additional shares of Kodak stock, and GRAY STILES purchased more than 18,000 additional shares. GRAY's purchases that day represented more than half of the shares of Kodak stock he purchased in the entirety of June and July 2020.

17. Days earlier, on July 23, 2020, Kodak received a draft, non-binding term sheet from DFC, which stated that the contemplated loan would have a principal amount of not more than $765 million. The DFC also undertook efforts to publicly announce the LOI, including scheduling the event to which the Company-1 CEO had been invited. On July 27, 2020, a media advisory was issued, which was intended to be embargoed until the afternoon of July 28, 2020. However, due to an error, the advisory was not marked as embargoed and was released by certain news outlets, through approximately three messages on a social media site, on July 27, 2020. Those messages were posted after the above-described trades were made by ANDREW STILES and GRAY STILES, the defendants, on July 27.

18. On July 27, Kodak stock opened at approximately $2.13 per share, traded at a high of $2.65, and closed at $2.62. The following day, on July 28, 2020, the DFC publicly

7

announced the letter of interest to provide a $765 million loan to support Kodak's production of pharmaceuticals, and a news article about the LOI was published early in the morning, prior to the market open. The LOI was signed in a public afternoon ceremony later that day. When the stock market opened on July 28, 2020, after the news article about the LOI was published, Kodak's share price was trading at $6.00 per share, and it rose to a high that day of $11.80 and closed at $7.94. The following day, July 29, 2020, Kodak's share price rose significantly, trading as high as $60 and closing at $33.20.

19. Early on or about July 28, 2020, ANDREW STILES, the defendant, texted GRAY STILES, the defendant, an "a-OK" hand signal emoji; Gray later responded, "Holy hell." Later that same day, and less than 24 hours after the news of the LOI was made public, ANDREW STILES sold all of his Kodak stock, totaling more than 93,000 shares. STILES's realized profits totaled more than $500,000. GRAY STILES began selling his shares on or about July 29, 2020, and continued selling intermittently until on or about August 11, 2020, at which point he had sold all of his Kodak holdings. In total, GRAY STILES sold more than 34,000 Kodak shares and realized profits of more than $700,000.

### ANDREW STILES Attempts to Conceal His Illicit Trading

20. In or about December 2020, the Financial Industry Regulatory Authority ("FINRA") opened an inquiry into trading in Kodak stock that occurred in advance of the July 2020 LOI announcement. In particular, FINRA identified a list of names and entities that had traded in Kodak stock prior to the announcement. The Company-1 CEO was asked to review that list, and in doing so, the Company-1 CEO realized the list contained multiple individuals with the last name Stiles, including "James Stiles."

8

21. At the time, the Company-1 CEO was not aware that the legal name of ANDREW STILES, the defendant, is James Andrew Stiles. After receiving the FINRA list, the Company-1 CEO contacted ANDREW STILES and asked, in sum and substance, if STILES knew anything about the relevant names. In order to conceal the presence of his name on the list, STILES responded, in sum and substance, and falsely, that the listed individuals with the last name "Stiles" were just his relatives, who traded stocks frequently, and that it was nothing to worry about.

### Statutory Allegations

### COUNT ONE
### (Conspiracy to Commit Securities Fraud and Wire Fraud)

The Grand Jury charges:

22. The allegations contained in paragraphs 1 through 21 are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

23. From at least in or about June 2020 up to and including at least in or about August 2020, in the Southern District of New York and elsewhere, ANDREW STILES and GRAY STILES, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) wire fraud, in violation of Title 18, United States Code, Section 1343.

24. It was a part and object of the conspiracy that ANDREW STILES and GRAY STILES, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and

9

contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state materials facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, the defendants conspired to commit insider trading in the securities of Kodak.

25. It was further a part and an object of the conspiracy that ANDREW STILES and GRAY STILES, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, through the use of interstate wires, including interstate securities trades and financial transactions, ANDREW STILES and GRAY STILES engaged in a scheme to defraud Company-1 by misappropriating confidential business information for the purpose of committing insider trading and executing securities transactions.

### Overt Acts

26. In furtherance of the conspiracy and to effect its illegal objects, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On June 4, 2020, June 5, 2020, June 29, 2020, and July 1, 2020, GREY STILES, having been tipped by ANDREW STILES, placed orders to buy a total of approximately 7,000 shares of Kodak stock, some of which transactions were with counterparties located in New York, New York.

b. On July 9, 2020, ANREW STILES sent GREY STILES a text message containing MNPI about Kodak.

c. On or about July 20, 2020, July 21, 2020, July 22, 2020, and July 24, 2020, GREY STILES placed orders to buy a total of approximately 9,240 shares of Kodak stock, some of which transactions were with counterparties located in New York, New York.

d. On or about July 27, 2020, ANDREW STILES sent GREY STILES a text message containing MNPI about Kodak.

e. On or about July 27, 2020, GREY STILES placed orders to buy a total of approximately 18,300 shares of Kodak stock, some of which transactions were with counterparties located in New York, New York.

(Title 18, United States Code, Section 371.)

### COUNTS TWO through SEVEN
(Securities Fraud)

The Grand Jury further charges:

27. The allegations contained in paragraphs 1 through 21 of this Indictment are repeated, realleged, and incorporated as if fully set forth herein.

28. On or about the dates set forth below, in the Southern District of New York and elsewhere, ANDREW STILES and GRAY STILES, the defendants, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, used and employed manipulative and

11

deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulation, Section 240.10b-5 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state materials facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, in violation of his duties of trust and confidence to Company-1, ANDREW STILES used material non-public information that he obtained pursuant to, and in connection with, his employment at Company-1 to trade securities, and he provided such information to GRAY STILES in anticipation that GRAY would trade securities on that information, and, based on that information, ANDREW STILES and GRAY STILES, knowing of ANDREW STILES's breach of duty, executed the securities transactions listed below on or about the dates listed below:

| Count | Defendant(s) | Trade Dates | Transactions |
|---|---|---|---|
| 2 | ANDREW STILES | June 3, 2020 – July 7, 2020 | Purchase of 79,599 shares of Kodak by Andrew Stiles |
| 3 | ANDREW STILES | July 20, 2020 – July 23, 2020 | Purchase of 2,629 shares of Kodak by Andrew Stiles |
| 4 | ANDREW STILES | July 27, 2020 | Purchase of 11,010 shares of Kodak by Andrew Stiles |
| 5 | ANDREW STILES GRAY STILES | June 4, 2020 – July 1, 2020 | Purchase of 7,000 shares of Kodak by Gray Stiles |
| 6 | ANDREW STILES GRAY STILES | July 20, 2020 – July 24, 2020 | Purchase of 9,240 shares of Kodak by Gray Stiles |
| 7 | ANDREW STILES GRAY STILES | July 27, 2020 | Purchase of 18,300 shares of Kodak by Gray Stiles |

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATIONS AND SUBSTITUTE ASSET PROVISIONS

29. As a result of committing one or more of the offenses alleged in Counts One through Seven of this Indictment, ANDREW STILES and GRAY STILES, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### SUBSTITUTE ASSETS PROVISION

30. If any of the property described above as being subject to forfeiture, as a result of any act or omission of ANDREW STILES and GRAY STILES, the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981, 982, and 1963; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

_____     _____
FOREPERSON                          DAMIAN WILLIAMS
                                    United States Attorney

2/21 & Sealed - Indicted Filed - 2 Warrants - Assigned to
USMS Valerie Figueredo        SL